UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GARY BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-01767-AGF |
| | ) | |
| | ) | |
| MONEYGRAM PAYMENT SYSTEMS, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 34) of Defendants MoneyGram Payment Systems, Inc. ("MoneyGram") and Wal-Mart Stores Inc. ("Walmart"), to dismiss or, alternatively, for summary judgment on all counts in Plaintiff Gary Black's complaint: violation of the Missouri Merchandising Practices Act (Count I); common law fraud (Count II); violation of the Minnesota Unfair Trade Practices Act (Count III); misrepresentation (Count IV); and breach of contract (Count V). Because the parties have presented matters outside the pleadings, the Court will address Defendants' alternative motion for summary judgment. Fed. R. Civ. P. 12(d). For the reasons set forth below, the Court will grant Defendants' motion.

## BACKGROUND

Viewed in the light most favorable to the non-moving party for purposes of this motion, the record establishes the following. On October 13, 2015, Plaintiff paid a transfer fee of $50 in order to make a money transfer of $2,500 through a MoneyGram money transfer service located inside a Walmart store in Farmington, Missouri. Walmart, at all relevant times, was acting as MoneyGram's agent. At that time, Plaintiff signed a document acknowledging that he had received and reviewed MoneyGram's consumer fraud warning, that the transaction was subject to MoneyGram's terms and conditions provided at the time of the transaction, and that Plaintiff agreed to such terms and conditions.

A few minutes after leaving the Walmart store, Plaintiff received a phone call from the intended recipient of the transfer who informed him there was a problem with the transfer. After arriving home from Walmart on October 13, 2015, Plaintiff found that he had a message on his answering machine requesting Plaintiff contact MoneyGram. Plaintiff was advised during a telephone call with MoneyGram that his transfer would not be completed, and that he would be reimbursed for the transfer fee and transfer amount at the store. Plaintiff returned to Walmart that day and was refunded both his transfer fee and the transfer amount ($2,550 total). The purpose of the money transfer was for Plaintiff to "secure a business asset" and to "establish a business relationship" with the recipient. (Doc. Nos. 30 at 4, and 40 at 7.) At some point after being refunded his money, Plaintiff arranged to pay for his business purchase by hand delivering payment to the recipient. The recipient was "not happy about the situation." (Doc. No. 40 at 9.)

Plaintiff had used MoneyGram's money transfer service at Walmart several times prior to October 13, 2015.

MoneyGram's terms and conditions, which are not in dispute, include a liability clause which states that "unless applicable law provides otherwise, [the sender's] exclusive and maximum remedy against MoneyGram is a refund of the transfer amount plus any transfer fees charged by MoneyGram." (Doc. No. 35 at 6.) The terms and conditions further state that "MoneyGram may refuse to provide [s]ervices to any person." (Doc. No. 40 at 4.) The terms and conditions also state that the services may be "delayed, restricted, forfeited, or ultimately unavailable due to certain laws and regulations," as well as "certain circumstances and conditions" associated with the use of the service. *Id.* at 2-3.

Plaintiff filed this pro se action in state court. The case was removed to this Court by Defendants on diversity jurisdiction grounds on November 30, 2015. (Doc. No. 1.)

In his lawsuit, Plaintiff alleges that Defendants advertised and represented that they would make money transfers for the general public for a fee; that their services could be relied on; and that their services would be convenient. Plaintiff further asserts that "time was of the essence" in securing his business asset, and as a direct and proximate result of Defendant's false, misleading and deceptive conduct, he "lost the business asset" and "lost thousands." (Doc. Nos. 30 at 4, and 40 at 9.) However, Plaintiff also admits by affidavit (Doc. No. 40 at 7-10) that he was able to hand deliver the money for his business purchase to the intended recipient, and that the recipient was merely unhappy. (Doc. No. 40 at 9.) Plaintiff has not requested any further discovery.

3

## ARGUMENTS OF THE PARTIES

In their motion, Defendants assert that summary judgment is warranted on each of Plaintiff's claims. Defendants argue that all of Plaintiff's claims should be dismissed because Plaintiff has received his exclusive and maximum remedy both under the terms and conditions governing the parties' transaction, and under the Minnesota Money Transmitters Act ("MMTA"), Minn. Stat. §§ 53B.01-.27. Defendants also assert that Counts I-III should be dismissed for failure to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9.[1] Aside from these arguments, Defendants assert each claim should be dismissed for the following additional reasons.

Defendants argue that Plaintiff lacks standing to bring his claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010-.1610, (Count I) because he was undisputedly attempting to purchase a business asset and the MMPA only applies to merchandise purchased primarily for personal, family or household purposes. Defendants alternately argue that even if Plaintiff has standing, Count I should be dismissed because Plaintiff's money was fully refunded, and therefore he has not suffered any ascertainable loss as required by the statute.

Defendants argue that Plaintiff's fraud claim (Count II) should be dismissed because Plaintiff cannot bring an independent tort claim against MoneyGram where, as here, the parties had a contractual relationship. Additionally, Defendants argue Count II must fail as Plaintiff cannot establish that his reliance was reasonable because

---

[1] Because the Court is considering Defendants' alternative summary judgment motion, it will not address Defendants' arguments regarding pleading deficiencies.

MoneyGram's terms and conditions make clear that MoneyGram could refuse service to any person.

Defendants argue that Plaintiff's claim under the Minnesota Unfair Trade Practices Act ("MUTPA"), Minn. Stat. §§ 325D.01-325F.991, (Count III) should be dismissed because Plaintiff is not a resident of Minnesota and does not allege he suffered any injury in Minnesota. Defendants also argue that Count III should be dismissed as to violation of MUTPA—and the various other Minnesota consumer protection statutes listed in Plaintiff's complaint—because Plaintiff's claims are not actionable under these provisions.

Defendants argue that Plaintiff's misrepresentation claim (Count IV) should be dismissed because Plaintiff cannot bring an independent tort claim where the actions at issue constitute a breach of contract. Further, Defendants argue Count IV should be dismissed because even if Defendants had a duty to tell Plaintiff why the money transfer could not be completed, which Defendants deny, Plaintiff was not damaged as a result of Defendants' failure in that regard.

Defendants argue that Plaintiff's breach of contract claim (Count V) should be dismissed because Plaintiff has failed to plead the terms of the alleged contract or the parties' rights and obligations thereunder. Further, Defendants argue that Count V fails because MoneyGram's terms and conditions advised Plaintiff that the money transfer might not be completed. Finally, Walmart argues that it has no liability under Count V because Plaintiff knew Walmart was acting as the agent on behalf of MoneyGram, a disclosed principal.

In response to Defendants' motion, Plaintiff argues that there is sufficient evidence to allow a jury to return a verdict for Plaintiff on each Count.

Defendants have not filed a reply, and the time to do so has passed.

## DISCUSSION

**Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In addition, the court "must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

To be a material fact, the factual issue must potentially "affect the outcome of the suit under the governing law." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1096 (8th Cir. 2007). "'[Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex*

*Corp.*, 477 U.S. at 322). "'Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" *Id.* at 1095 n.3 (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## Limitation of Remedies

As an initial matter, the Court will address Defendants' argument that both the MMTA and the terms of the contract limit Plaintiff's potential recovery to the refund he already received.

### Limits Imposed by the MMTA

Under the MMTA, a "money transmission" is defined as "selling . . . or engaging in the business of receiving money for transmission or transmitting money . . . ." Minn. Stat. § 53B.03 (2001). "A licensee's responsibility to any person for a money transmission conducted on that person's behalf by the licensee or the licensee's authorized delegate is limited to the amount of money tendered or the face amount of the payment instrument purchased." Minn. Stat. § 53B.22 (2001).

It is not clear to the Court that a money transmission was "conducted" here, so as to trigger § 53B.22's limitation of remedy, because Defendants declined to transmit money on behalf of Plaintiff. *Cf. Jones v. W. Union Fin. Servs*, 513 F. Supp. 2d 1098, 1099 (D. Minn. 2007) (holding that Plaintiffs' damages were limited by § 53B.22 where

7

the Defendant completed a money transfer but not to the correct recipient as instructed). However, it is unnecessary for the Court to resolve this issue because it will grant Defendants' motion for summary judgment on alternative grounds, as discussed below.

**Limits on Damages Imposed by Contract**

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.'" *H & R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 944 (8th Cir. 2012). It is undisputed that the terms and conditions at issue include a choice-of-law clause selecting Minnesota law to govern the construction of the contract. Therefore, the Court will apply Minnesota substantive law to the contract claim.

Minnesota recognizes the validity of limitation-of-remedies clauses. "[P]arties may contract for an exclusive remedy which shall be binding on them in the event of breach of contract. Where parties stipulate what the consequences of a breach of agreement shall be, such stipulation, if reasonable, is controlling and excludes other consequences." *Indep. Consol. Sch. Dist. No. 24, Blue Earth Cnty. v. Carlstrom*, 151 N.W.2d 784, 786-87 (1967); *see also Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 448 (Minn. 1980) (noting that "parties are free to limit remedies for non-performance"); *Morgan Co. v. Minnesota Min. & Mfg. Co.*, 246 N.W.2d 443, 447-48 (1976) ("Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount . . . .").

8

Here, the contract expressly provides that the exclusive and maximum remedy for non-performance is a refund of the transfer money and any transfer fees. The record establishes that Plaintiff has received a refund of both the transfer money and fees, and therefore has received his maximum remedy under the contract for non-performance. Even if the Court were to agree that Defendants breached their agreement with Plaintiff, he would be entitled to no additional remedies.[2] Summary judgment for Defendants on Count V (Breach of Contract) is therefore warranted.[3]

Although the Court agrees with Defendants that the damages limitation in the parties' contract limits Plaintiff's remedies for non-performance to a refund of the amount tendered, Defendants do not address, nor is it clear to the Court, whether Plaintiff's non-contract claims properly fall within the ambit of this clause. *See Johanns v. Minn. Mobile Storage, Inc.*, 720 N.W.2d 5, 12 (Minn. Ct. App. 2006) (holding that a clause which limited defendants' liability to a specified amount may not be enforceable as to intentional, willful conduct); s*ee also Morgan Co. v. Minn. Mining & Mfg. Co.*, 246

---

[2] Moreover, assuming a valid contract was formed between the Parties, Plaintiff could not prevail on a claim for breach premised solely on the fact that MoneyGram failed to perform the service for Plaintiff. MoneyGram did not promise to transfer money on Plaintiff's behalf without condition. The agreement unambiguously reserved to MoneyGram the right to "refuse to provide Services to any person." (Doc. No. 40 at 4). A party who unambiguously reserves rights in a valid contract is not in breach for exercising those rights. *See In re Air Transp. Excise Tax Litig.*, 37 F. Supp. 2d 1133, 1142 (D. Minn. 1999).

[3] Because the Court finds that summary judgment is warranted based on the explicit terms of the parties' contract, the Court need not address Walmart's alternative argument that it was acting as an agent of a disclosed principal and therefore bears no liability.

N.W.2d 443, 448 (Minn. 1976) (holding limitation of remedies clause applicable to some claims but not intentional misconduct, misrepresentation, and fraud).

However, the Court need not reach the issue of whether the damages limitation clause applies to the remainder of Plaintiff's claims because it will grant Defendants' motion for summary judgment on these claims on other grounds, as follows.

**<u>Missouri Merchandising Practices Act Claim (Count I)</u>**

The MMPA "protects consumers by expanding the common law definition of fraud 'to preserve fundamental honesty, fair play and right dealings in public transactions.'" *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (quoting *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo. Ct. App. 1973)). Section 407.020 makes it unlawful to use deceptive or unfair practices "in connection with the sale or advertisement of any merchandise in trade or commerce." *Ward v. W. Cty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. 2013), *as modified* (May 28, 2013).

The MMPA creates an individual cause of action for any person "who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1. "In order to state a claim for violation of the MMPA, plaintiff was required to allege that [he] (1) [purchased or] leased merchandise from defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared

10

unlawful by section 407.020." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. Ct. App. 2009).

In this case, it is undisputed that Plaintiff purchased money transfer services "to secure a business asset" and "establish a business relationship." Plaintiff's purchase of money transfer services was, by his own account, for business purposes. Plaintiff therefore lacks standing with respect to his MMPA claim. *See Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997) (holding that a claimant alleging a violation related to a business purchase "does not have standing to bring a claim under Missouri's Merchandise Practices Act").[4] Therefore, the Court will grant Defendants' summary judgment motion as to Plaintiff's MMPA claim.

**Common Law Fraud Claims (Counts II and IV)**

Although Defendants assert that Minnesota law, rather than Missouri law, governs Plaintiff's tort claims, the Court need not resolve this issue because the state laws are not in conflict. *Bacon v. Liberty Mut. Ins. Co.*, 688 F.3d 362, 366 (8th Cir. 2012) (holding that where "no true conflict exists . . . , no choice-of-law analysis is required") (citing *Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n. 7 (8th Cir. 2004)).

---

[4] Additionally, it is not clear to the Court that Plaintiff suffered an ascertainable loss as a result of Defendants' conduct. Although "the ascertainable loss requirement may be satisfied where it is uncertain or difficult to qualify damages, the requirement is not satisfied where plaintiff claims speculative, non-pecuniary harm or where he alleges no out-of-pocket costs." *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014) (citations and quotations omitted). Even assuming time was of the essence, Plaintiff was notified of the problem with the transfer within minutes. Plaintiff describes no out-of-pocket costs and received a full refund. There are no facts in the record that establish a basis for Plaintiff's alleged loss of "thousands" except the speculative harm caused by the recipient's displeasure.

11

**Fraud (Count II)**

A tort action does not arise from a breach of contract, unless the basis of the tort is a duty that is "superimposed by operation of law as an incident of the relationship between the parties rather than the contract." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1216 (8th Cir. 1973). "But the mere existence of a governing contract between the parties does not preempt or eliminate the possibility of a tort claim." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 597 (D. Minn. 2014) (citing *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998)). In some circumstances, "a single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 197 (Mo. Ct. App. 2007). "If a tort claim is based on a breach of duty that is indistinguishable from the breach of contract, the tort claim will fail, but if a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself, the tort claim is viable." *Zimmerschied*, 49 F. Supp. at 597 (quotation and citation omitted).

In Count II, Plaintiff alleges that Defendants intentionally misled him into purchasing their services through false statements and advertising. Viewed in the light most favorable to Plaintiff, these allegations may be read as an attempt to assert an independent tort claim for fraudulent inducement. *See Kincaid Enters, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo. Ct. App. 1991) (holding that a party who "fraudulently induces another to contract and then refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims").

However, "[i]n order to establish a submissible case of fraud, [plaintiff must] show . . . a false, material representation" was made by the defendant. *Strebler v. Rixman,* 616 S.W.2d 876, 877-78 (Mo. Ct. App. 1981); *see also Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 39 (Minn. 1967). "Under the common law, a party may be liable for fraud either by making an affirmative statement that is false or by concealing or not disclosing facts under certain circumstances." *Graphic Commc'ns. Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). "It is axiomatic that fraud cannot be predicated on the truth. A true representation is not actionable." *Rien v. Cooper*, 1 N.W.2d 847, 851 (Minn. 1942).

Here, the record holds no evidence that Defendants made a false statement, improper omission, or other false guarantee that the transfer would be completed. The record instead establishes that Plaintiff was informed that the transfer services could be refused entirely. The Court will therefore grant Defendants' motion for summary judgment as to this claim.

**Misrepresentation by Omission (Count IV)**

In Count IV, Plaintiff claims Defendants breached a legal duty to disclose the reason for denial of services. As with the fraud claim in Count III, this allegation could give rise to a tort claim separate from breach of contract, but only if Defendants in fact breached a duty to disclose.

Under the common law, one party to a transaction generally has no duty to disclose material facts to the other party. *Graphic Commc'ns Local 1B Health & Welfare Fund A*, 850 N.W.2d at 695. However, a party may be liable for fraud by concealing or

not disclosing material facts under certain circumstances. *Id.* To prevail on a fraudulent omission claim, there must be a suppression of material facts which one party has a legal or equitable duty to communicate to the other. *See Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976). *See also Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 791 (Mo. Ct. App. 2001) ("An omission may be considered a misrepresentation if the silent party has a duty to speak."). Such a duty can arise in one of the following circumstances: "(1) where a party has made a representation and must disclose more information to prevent the representation from being misleading; (2) where a party has special knowledge of material facts to which the other party does not have access; and (3) where a party stands in a confidential or fiduciary relation to the other party." *Exeter Bancorporation, Inc. v. Kemper Secs. Grp., Inc.*, 58 F.3d 1306, 1314 (8th Cir. 1995) (interpreting Minnesota law) (citations omitted). *See also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005) ("[A] legal duty to speak 'may arise from a relationship of trust or confidence, an inequality of condition, or superior knowledge that is not reasonably available to the other party.'") (quoting *Ziglin*, 36 S.W.3d at 791).

Plaintiff asserts that Defendants refused to disclose the reason the money transfer services were declined and that they had a duty to do so. But Plaintiff does not offer, nor can the Court find, any basis for such a duty. Plaintiff has not alleged that a fiduciary relationship existed, or that Defendants needed to say more to dispel a misleading statement. It is undisputed that the decision to decline to transfer money on Plaintiff's behalf was made after the parties entered the agreement. As such, although Defendants

14

may have "special knowledge" of the reason the transfer was declined, because the decision to decline the transaction occurred after the parties entered the agreement, it could not have been material to Plaintiff's decision to enter the agreement. Moreover, Defendants could not have a duty to disclose a fact they did not yet know. To the extent Plaintiff complains that Defendants had specialized or superior knowledge because they knew *before* the parties contracted for services that MoneyGram intended to reject his transfer, he provides no support for this proposition. And as stated above, Plaintiff has not requested additional discovery. Mere allegations not supported with specific facts are insufficient to survive summary judgment. *Depositors Ins. Co.*, 506 F.3d at 1096. The Court will grant Defendants' summary judgment motion as to this claim.

**Minnesota Statutory Claims (Count III)**

A plaintiff has the burden of establishing subject matter jurisdiction, *Hoekel v. Plumbing Planning Corp.*, 20 F.3d 839, 840 (8th Cir. 1994) (per curiam), for which standing is a prerequisite, *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). To establish standing, a plaintiff is required to show that he or she had "'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' Second, the injury must be traceable to the defendant's challenged action. Third, it must be 'likely' rather than 'speculative' that a favorable decision will redress the injury." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (citations omitted). "[P]laintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Ferrari v.*

*Best Buy Co., Inc.*, CIV. 14-2956 MJD/FLN, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) (citation omitted).

The Court agrees with Defendants that Plaintiff does not have standing to assert claims under the MUTPA and other consumer protection statutes listed in Count III. Plaintiff is a resident of Missouri and does not allege anywhere in his petition that he suffered any injury whatsoever in Minnesota. The Court concludes that Plaintiff lacks standing to bring his claim under Minnesota's consumer protection statutes and will grant Defendants' summary judgment motion as to this claim.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for summary judgment (Doc. No. 34) filed by Defendants MoneyGram Payment Systems, Inc. and Wal-Mart Stores Inc. is **GRANTED**.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

*/s/ Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of July, 2016.